Case number 13-1184, Midland Power Cooperative et al. Petitioners v. Federal Energy Regulatory Commission Mr. DeGrandes for the petitioners, Ms. Smith for the interveners, Ms. Lussing for the respondent. Mr. DeGrandes, for the interveners, Ms. Smith, Mr. Lussing, Ms. Lussing, Ms. Smith. Good morning, Your Honors. May it please the Court, my name is Phil DeGrandes. I'm counsel of the Midland Power Cooperative and the National Electric Cooperative Association, or NRECA as it's known. I'd like to reserve three minutes of my time for rebuttal. Your Honor, I'm going to address briefly this morning three purpose sections that were either violated or misapplied, Sections 210H, 210M, and 210A. Before I do, I just want to note that in this case, the QF exercised self-help. They withheld retail payment on a retail bill where there's no dispute as to the retail charges or the retail payment. They withheld the payment by claiming they're owed more for their output that's sold back to Midland. FERC ordered reconnection, even though it stated that the QF's basis for a higher rate is inconsistent with 30 years of perfect precedent. That's in the rehearing order at Paragraph 36. Regarding Section 210H, the FERC orders violate and usurp the Federal District Court's role under 210H. Under the enforcement scheme under 210H, as interpreted by this Court, Industrial Co-Generators, and Niagara Mohawk, FERC is limited to bringing enforcement actions in Federal District Court. If they fail to, the QF can file an action in Federal District Court. It's the Federal Court that determines if PRPA was violated, and it's the Federal Court that determines if it was violated, what relief to grant, if any. Injunctions, stays, whatever. In this case, FERC usurped both functions of the Court. It issued a coercive injunction. Midland shall reconnect. Don't you have a problem that this argument, as considerable as it may be, wasn't made on rehearing? You made a notice and comment argument on rehearing. That requires us to do some mental gymnastics, doesn't it, to get to where we are now? Your Honor, we actually did make the 210H argument. In the NRECA rehearing request, we said that demonstrates that the Federal Courts and not the Commission should be the enforcer. That's NRECA rehearing request JA95. We also said Section 210H of PRPA only provides the Commission with limited authority to bring enforcement actions in Federal Court of rules properly promulgated. In addition, Midland noted under Section 210H of PRPA, this is a JA55, the Commission lacks authority to enforce a new requirement if those requirements are not enacted pursuant to Section 210A. But we did link it back to 210H, and the reference in the NRECA rehearing request is expressed. The Commission, the courts, Federal Courts, and not the Commission is the enforcer under Section 210H. That's a JA95. And we believe under the precedent of this Court, Louisiana Interstate Gas Corp. and others, that the substance of the arguments is substantially similar, and the request for a hearing gave notice regarding the grounds. Those were in footnotes, weren't they? One was a footnote. There were articles within footnotes. It was a lengthy footnote. At the very least, you didn't lead with this, right? I mean, we have to do some searching to find it. Is that adequate? Your Honor, I'd say that it was, since the petition was mainly focusing on avoided costs, that was the beginning part of our rehearing request, but then we did focus on the scope of FERC's authority and did hit 210H, Your Honor. Can I ask you if you're, if you are right about that, and I want to ask about, so what would we do? So I understand your argument would be we would have to vacate the injunction order, correct? Yes, Your Honor. But we wouldn't say anything about anything else, would we? Because we don't have any jurisdiction. Well, Your Honor, I think that the federal district court determines that PERPA was violated and fashions relief. So we believe that the commission's conclusion that our actions were inconsistent with PERPA were also ultra-various because that also intrudes into federal district courts. Well, what about what we did in industrial co-generators? Do we need to vacate the whole thing then? Well, industrial co-generator is slightly different, Your Honor, because that was a general rule and I don't believe it was applied to a specific party. But in this, I think you did vacate. They were trying to enforce an order. Excuse me, Your Honor? It says the order that ICS has to review is inextricably tied to the enforcement scheme. And we said that the enforcement action has to be brought in federal court and that neither the vacating order nor the underlying declaratory order, which were the orders at issue, has any effect outside the context of enforcement scheme. And therefore, they're only advisory with respect to the parties. And we said, therefore, we hold that this court does not have jurisdiction to review the vacating order here challenged. Accordingly, the petition for review is dismissed. So I'm wondering whether under your view of the case, we need to, at the best, the most we could do would be to vacate the injunction and dismiss the rest of the case for lack of jurisdiction. Your Honor, I would say that the determination by FERC that the disconnection was violative of PURPA, even though it was consistent with state law or contract rights, et cetera, was integral to their issuing the course of injunction. It may have been. So what we said about this in industrial co-genitors is the district court's jurisdiction precludes review of the vacating order. Neither the vacating order nor the declaratory order has any effect outside the context of enforcement action. Isn't that your view? Isn't your view that the FERC's order here has no force unless they try to enforce it? Your Honor, this is a, they didn't just issue a memorandum of law. Yeah. They said you shall reconnect. I understand. So imagine we vacate that portion of their order. Right. So that's gone. I'm not sure we can do that. But assuming we can, then they're left with something that's very nice. It says what they think. But according to co-generators, it doesn't fix any rights until they try to enforce it. Well, Your Honor, in this case, they did enforce it against us. Well, they didn't enforce it except in the district court. What we said in co-generators is, and I thought this was your argument, the only way they can enforce it is in district court. That's correct, Your Honor. Well, if that's the case, then we have a nice advisory opinion from FERC on the other things, which doesn't bind, assuming we vacate the order. The thing is, you regard the injunction as completely ultra-biased. To vacate the injunction, we have to accept that proposition, right? So much of the opinion, possible opinion, doesn't pose a problem under industrial co-generators, does it? Well, Your Honor, I would just say determining that the course of injunction was ultra-biased and vacating it, yes, that's definitely. And it doesn't take any thought to do that other than here is an enforcement injunction. Here is a case that says you can't issue an enforcement injunction unless you go to the district court. End of the case. We don't have to discuss the FERC's rationale, FERC's reasoning, nothing. It's simply that they don't have authority to enforce without going to the district court. I understand, Your Honor. I would just submit that it would create ambiguity, I think, for the industry as to whether FERC's order still has legitimacy such that it could be enforced against others in the future. It was enforced against us. Well, imagine that they didn't have this injunction part of it. Right. All they did was have these findings. That's right. Do you think you could have come to our court at that point with just those findings? No, Your Honor. You don't think you could? No. If they just made a memorandum of law to the federal court, unless they took it to federal district court, no, we would not have gone to you. That's correct, Your Honor. But they did. There's no ambiguity and you shall reconnect. And the basis upon which they did it is flawed. It violates sections 210-M. I understand that. Let me ask the next question, which is, I think I know what your answer is, but I'd like to be sure. Why not wait until they, since they can't enforce it against you, except through the district court, why does that come here? Why don't you just wait until they try to enforce it against you and then your defense is whatever your defense is? Your Honor, we're a not-for-profit cooperative. We have a federal agency ordering us to take a specific action. If we fail to do that, because FERC has the ability to impose million-dollar-per-day penalties, we simply cannot take that risk. Even before there was a district court order? Yes. I mean, it's ultra-v-raised, but FERC has the ability to impose penalties of million-dollars-per-day in different aspects of its record. There's a lot of law withholding penalties for violating invalid injunctions. Excuse me, Your Honor? There's a lot of law upholding penalties for violating invalid injunctions. Yes, Your Honor. And we just simply couldn't take the risk. And who knows, we're already being sued in state court for violating PURPA by the same complainants, and who knows what other tribunals or courts could do with a decision that said, you shall reconnect, and we failed to do that. If they had initially did a memorandum of law and said, we're going to go to federal district court because we think you're wrong, as this court had said, that can inform the conduct of the parties, that we would adopt a strategy at that point, either fighting them in federal district court or whatever. But to violate a directive from a federal agency that has the ability to impose million-dollar-per-day penalties, we could not take that risk as a not-for-profit cooperative. And NRECA is in this case because its members are similarly situated and could not take that risk. And if this is ambiguous, it becomes a rule of law that 210-M must be satisfied. 210-M is impossible to satisfy in a non-retail choice state. If we eliminate the – I'm sorry to harp on this. I'm just trying to get it cleared in my own mind. If we vacate the injunction, then there is nothing there except this free-floating views of FERC on this question, which they can't enforce until they go to district court. And if they try to enforce it, you'll have an opinion that's – if something would come out that way, you would have an opinion saying they can't enforce it without going to district court. Understood, Your Honor. So wouldn't that be the – isn't that the appropriate disposition then? That's a nice, appropriate disposition, Your Honor. You'd like more? Just a little more to say that 210-M doesn't apply in this situation. At least as I understand it, FERC's view of 210 is that it gets around the whole prior existing scheme. Isn't that the case? That's their contention, Your Honor. Right, right. That's their contention. If that is correct, then arguably the injunction would survive, right? If their view on 210-M was correct? At least as I read their final order, it wipes the slate clear on how – If they're correct on 210-M, is that your – Yes, yes. Yes. Your Honor, I want to finish your question. I ran out of time. Could Matt finish responding? I agree with you that – No, I – what I was trying to get from you, I've got from you. Okay. Let me ask you, if we were to do more than what Judge Gardner suggested, do what you suggested, as I understand the statutory scheme, the first interpreter of – the first ruling on FERC's interpretations are supposed to be in the district court. That's correct, Your Honor. You're asking us to make one here, right? Well, Your Honor, we didn't create the procedural problem. The FERC orders did. By making these ultra-vigorous actions and – All I'm saying is you shouldn't be asking us to rule on 210-M, right? Only to the extent, Your Honor, that it was integral to their determination that we violated PERPA, which is what the federal district court should determine. That's the first step that the federal district court took. Okay. They usurped that. Okay. Other questions? All right. We'll hear from FERC. Are all – we have an intervener? Sorry. Ms. Smith. Sorry. May it please the Court, for utility customers in Iowa, issues associated with retail electric service, including disconnection, are entirely within the jurisdiction of the IUB. The IUB, like the 50 other states, has expressed procedures that protect customers in the event of disconnection. Well, but if – imagine for the moment that your opponents are correct, that they were entitled to cut off the QF connection. Okay? Now, that necessarily cuts off the – Iowa doesn't claim it has authority over the QF connection, right? It's the retail connection. That's what you just said, isn't it? The Iowa Utilities Board has jurisdiction over the retail electric service. Yes. The problem here is that the Sweckers didn't pay their retail electric bill. Yes, but they only have one connection. It has both their retail and their QF service, right? Same connection as both. Am I just – I'm a fax. That's correct, isn't it? Yes, Your Honor. However, FERPA does not, nor FERC's implementing requirements, require two connections. And the Federal Power Act restricts FERC from regulating matters regulated by the states, and the states regulate retail. But it also restricts the states from regulating matters that are up to FERC, right? Yes, and to the extent this matter was up to FERC, FERC could proceed under PERPA and they could use the enforcement provisions under 210H, which was a glide path where they could go to Federal District Court and resolve the matter. But they chose not to issue an order to enforce in this matter. In fact, they even claimed in their order that the underlying avoided cost dispute is meritless. FERC should not be allowed here to take a garden variety retail non-payment dispute that belongs under the IUB jurisdiction and twist it into a QF matter. Questions from the bench? You have 53 more seconds. Well, I would say that FERC has the exact same authority to order reconnection of retail electric service here as it does to order the Sweckers to pay their bill. Absolutely none. If anything, PERPA titles 1 and 3 reinforce that states continue to have jurisdiction over retail electric service. Those sections require states to consider a list of policies, which include retail disconnection, and the states can consider the policies, and if they're appropriate for that, their jurisdiction, they can adopt them or not. Congress appropriately left disconnection and related policies in the hands of the government agency closest to the customer. This court should vacate FERC's unlawful reconnection order over retail electric service for which it has no jurisdiction. Thank you. All right. We'll hear from FERC. Thank you. Good morning. May it please the Court, Your Honors. Lisa Lofting for the Federal Energy Regulatory Commission. I'd like to first address whether they raised the reconnection issue on rehearing. I think raising it in a footnote, in a parenthetical, all the way at the bottom of JA-95 is not sufficient to properly preserve. What's wrong with the text that says, because Section 210H of PERPA only provides the commission with limited authority to bring enforcement actions in federal district court of rules properly promulgated under Section 210? I think the context here provides, especially the first part, as the new prior approval requirement was not enacted through such a process, enforcement is improper because it wasn't properly promulgated under Section 210A of PERPA. What about specification number 5 on page 92, which doesn't seem to have any context at all? The list of the specifications of errors, and it says, again, Section 210H of PERPA only provides the commission with limited authority to bring enforcement actions in federal district court of rules properly promulgated under Section 210A of PERPA. I see that, but then the second sentence seems to qualify the first sentence, because it says, as the prior approval requirement was not the subject of 210A, enforcement of this new requirement retroactively to Midland is improper. I think when you read number 5 altogether— We'd have to delete the federal district court part. You're saying that was just surplusage. They didn't have to say that. They didn't mean to say that. I think when you read the entire specification of error number 5, and associated with the arguments in the actual request for a hearing, they never flesh out this argument. And frankly, if they were arguing that the commission didn't have authority to order reconnection, it would have been and should have been very prominent in the hearing request. Let's skip over to the merits then. Does the commission have authority to bring an enforcement act to try to enforce by injunction without going to district court first? The commission has not addressed this. You have to address it now because this is the main merits question before you, so take a flyer on this one. Okay. I would say that all FERC orders require FERC to go to district court. I think it's Section 314 of the Federal Power Act. Yes, it expressly says exclusive jurisdictions in the district court. Exactly. So any time FERC orders anyone to do anything, that is only enforceable in district court. The same would be true here. I think also— So they can't order. The first part of the commission's order, which says Midland shall reconnect, that was improper. They can't do that without going to district court and asking the district court to order it, right? I think that the commission can issue orders, and it's whether they are enforceable if someone doesn't comply with them. What's the commission's view about that? If they had not complied, do you think all FERC would have done is gone to the district court? I'm not sure what the commission would have done. I think that would be a logical next step. I'm trying to grasp what you're saying. You're saying, okay, enforcement is in district court, and that means the commission issues orders to the world, and then if they disobeyed, it goes to district court, right? That's correct. And is that the way—issues orders subject to contempt penalties, and then it goes to district court if they disobey. Is that the way—are you saying that is what FERC has done in the enforcement of PURPA in all these years? I'm speaking generally under the Federal Power Act. Orders under PURPA are enforceable. Let's stick to PURPA. Let's stick to PURPA. In PURPA, the FERC has jurisdiction over implementation challenges, and those—that's under 210H. Those would go to district court if the commission exercised its discretion to bring them. I also think there's an open question whether this is even an implementation challenge. Again, the commission hasn't addressed that. Your idea of implementation appears to be that first there's an order from FERC ordering people to do things on pain of contempt, I guess fines as well, including fines. And so the recipient of that order is in serious legal jeopardy, and then the commission can go to federal court to pin it down. I'm sorry, Your Honor. No, traditionally in the PURPA context, the commission would issue a declaratory order and nothing more. And what do you think it was doing here? I think the commission was trying to fashion a remedy given the very preliminary nature of this case. Was it not issuing an order on penalty of contempt? The order does not say that. Yes, there's one ordering paragraph that says Midland shall reconnect. It doesn't have a time period by which Midland has to comply. It doesn't say it's under penalty. And, in fact, in that same order, they are the commission is ordering settlement procedures to try to get the parties to work this out. This is precatory then, or is it mandatory? If you're the recipient of this, what is one supposed to think? I would certainly treat it as mandatory. However, they did not see clarification. And at that point, isn't it gone beyond the bounds of PURPA? Isn't that the very issue? Does FERC have the authority to mandate conduct without going to the district court? Does it? I think that it could have authority outside of Section 210H. I'm sorry, how do you mean it could have? What does that mean? I think it could have authority to say this is a violation of our regulation. Section 210H only applies to implementation challenges. Isn't there a difference between saying this is a violation of our regulations and ordering somebody to do something? One could be an advisory opinion. It sounds very much like enforcement to me. Yeah. It does, but I'm just not sure it's necessarily an enforcement action under 210H. The commission has broad powers. What is it? Well, Midland here, I know the— It could be about— Your position is quite different from the commission's own order. Looking at Paragraph 32, prior to the commission's implementation of 210M, which was added by FAC 2005, the commission in practice left issues regarding disconnections with state regulatory authorities. And then it goes on to entirely, as far as I can make out, depend on 210M. It does detail Section 210M. Appearing to regard 210M as overthrowing the pre-existing scheme. Right. And actually, Section 210H only talks about implementation challenges for violation of 210H— I'm sorry, 210A. This is arguably a violation of 210M. This is a utility. What makes it arguable? Can you call my attention to any phrase in 210M that helps the commission on this? I'm just speaking in terms of 210H and implementation. 210M seems to be what the commission rested on, okay? You just said, well, there may be a problem with 210A, but 210M is completely different. That suggests you're trying to get something out of 210M, and I'm trying to figure out what you're trying to get out of it and where in 210M you find it. Well, the commission was interpreting disconnection to be synonymous with termination. And 210M is where— What in 210M supports such reading? Just give me language. 210M relates to terminations of the purple purchase and sale obligation. In particular context, right? That's correct. It's dealing with the problem of a utility which is connected with the QF, and then it turns out that in fact the distribution network or the transmission network has improved so that the QF is facing a completely competitive market and there's no need, right? Right. And that has no bearing at all on this case, right? That's correct. That's correct. The commission— I want to make sure you agree. Yes. It has no bearing. So in other words, the substantive provision of 210M is no basis at all for the commission to do what it did here. 210M gave the commission authority, specified different options for terminating the purple purchase and sale obligation. And it says what context it relates to, right? Yes. That's correct. What is that context in your own words? When there's competitive markets or the ability to purchase retail power from competitors. There's no obligation to sell. And so Congress limited the opportunities here for termination. Absolutely. The commission— I'm sorry. You're saying there's something in 210M that supports the view that because a QF fails to pay its retail bill and is hooked up with a single line, there can be no disconnection merely for failure to pay the bill. The commission has left open the possibility that it could— The commission acted here. The commission acted. It didn't leave open a possibility. It issued—you cannot say that an agency can avoid the finality of its rulings by saying, well, you know, we might think differently someday down the road. Well, I think there's a strong argument that they could not satisfy anything in 210M. Let me put it another way. Is there any argument that they could satisfy 210M? Well, 210M-6 does relate to contracts that are entered into prior to the legislation passing and— Well, it protects those contracts. It does protect those contracts. So that seems to have exactly the opposite way. Yes, it's that there's a factual dispute in the record as to whether that 2004 settlement agreement is even valid. M-6, to the extent applicable, would help the utility here, right? So the best you can do is find it inapplicable. So we're still in search of a phrase in 210M that is helpful to the commission. Your Honor, I'm not sure that the commission needs to find a way to terminate under Section 210M. Their answer might be no. It's not a question of finding a way to terminate. It's finding a way to order non-termination of retail service under state law.  Could you repeat the question? The utility here is not interested in a termination order from FERC, right? That's true. It's got an authority from the right place to terminate, right? Well, I would object to that characterization. The Iowa Utilities Board does not have jurisdiction over Midland's rates. It has jurisdiction over non-rate terms and conditions. But when there is a dispute over the avoided cost rate, for the Iowa Utilities Board to make findings — It wasn't passing on that. It was passing on the non-payment of the retail charge. Sure. That's correct, however — You know that the QF here was completely free to go ahead with its dispute over the avoided cost rate. The only problem being paying its retail bill, right? The minute it starts to pay its retail bill, it's home free. No problem. I think that the legislative history and purpose of PURPA supports supporting small, renewable facilities as opposed to traditional utilities that have been reluctant to serve these — And what is 210M aimed at doing in that context? 210M is aimed at relieving the obligation to the extent there is a whole competitive market or a market. And Midland was not seeking anything under that. No. Maybe it will someday, but not now. So we're back to square one before 210M was enacted. Right. Now, that's correct. I think it has limited options under 210M. There's also waiver — I'm sorry. What's it? Excuse me? What's it in that sentence? You said it has limited options. Midland. Midland has limited options. It doesn't have any options relevant to this dispute under 210M. It's not interested in terminating because the market is now competitive. No, perhaps it cannot terminate under 210M. It could seek waiver under the Commission's regulations. All right. 292.402. You still have not pointed me to a single word in 210M that provides authority to the Commission to do what it did here. The Commission was simply interpreting its regulations and now finding — What are the regulations at? Excuse me? What are the regulations at? They seem to just map 210M itself. Right. And they say on this record, you have not satisfied 210M. It may be that they cannot satisfy them. Congress listed the provisions, and they, on this record, had not satisfied those provisions. So I'm sorry. The Commission's view, then, is that 210M had a negative pregnant, that we're creating this special arrangement for termination. And, by the way, any other termination of any kind on any ground has to go through this, even though none of the language in 210M relates to other grounds. Is that the contention of the Commission? Yes. I mean, there's low-loading conditions. You need to come to the Commission if you have low-loading conditions. You need to come if there's an emergency. I don't think it's so unreasonable to find that disconnection would not be allowed under these circumstances. I'm still a little stuck on our jurisdiction. Sorry, before we get to the merits. So do you agree that FERC cannot issue an enforceable — an order except by going to the district court? And in the normal course, what FERC does is issue a declaratory order which says X, in this case Midland, violated PURPA. And then, if it wants to enforce it, it has to go to district court. Do you agree with that? Yes. All right. So doesn't that require us to — that asks — okay. And with respect to all the rest of the declaratory order in this case, is it not the same as a declaratory order and the vacating order in the co-generators case? That is, an order that neither fixes the rights of any party or does anything more than state how FERC interprets its own regulations. That's correct. That's all you're doing. That's correct. So why — since that is true of the entire body of the opinion, we don't have jurisdiction over that. Is that — of that part, is that correct? That's correct. But as to the first part, which does seem to fix the rights of a party, namely it orders Midland to do something, doesn't just find a violation. Don't we have to vacate that? Because that we do have jurisdiction over. I think rather than vacate, I think that the commission, if it were properly — since it was not properly raised to the commission, I would contend — Assuming it — I want you to assume it was. Assume it was? Yeah. Then I still think that — I suppose the commission could send us a letter tomorrow saying that, in fact, part A of the order, we just made a mistake, it wasn't really an order, and they're not under penalty of a million dollars a day, and they can do whatever they want until an enforcement order comes to the district court. But it's not likely we're going to get that letter because who can represent the commission's actual view without a vote? Is there anyone? No. No, I think they would need to vote. Right. And they're not likely to do that today, are they? Or tomorrow? Probably not. Very busy people. Yeah. So isn't the right thing to do then to vacate that portion of the order, which is clearly against the statute, as we both agree, that provides exclusive enforcement authority in the district court? I suppose if the court finds there's absolutely no basis for the commission to order — I'm not saying this is a — I'm not — I'm interested, but I'm not discussing the merits discussion that you and Judge Williams had. I'm saying only in light of Section 825P, the Federal Power Act, which gives exclusive jurisdiction to the district courts for any action to enforce any liability or duty created by that act, and then the reference through PURPA to the act means that FERC can't do this on its own. That's all. You've agreed with me that that's true. FERC can't do this on its own, can't order somebody on its own. No. Yes, you agree. I do agree. Yes. I'm sorry. Sir. Sir. Contrary to what seems to be the language of the order, you're saying that even with 210M, FERC has no authority to issue this order. Is that correct? Your Honor — It seems to be quite the — absolutely the opposite of the language of the order. I think that the reconnection issue in that one paragraph in the first order is a separate issue from whether the commission properly interpreted its regulations. The 210M issue has nothing to do, in your view, or mine, with the question of the enforcement authority of FERC. That's correct? That's correct. You're claiming it gives you additional authority over declaratory orders about whether terminations are lawful or not, but you are not claiming that it somehow gets around the exclusive jurisdiction of the district court to enforce. Correct? Correct. And as to that, you're just asking us to apply our deference, right? Yes, Your Honor. As to the latter. As to the latter, yeah. One final point. I do think that the commission could provide an answer to its authority in ordering Paragraph A. And there's substantial case law that says that, you know, the commission should have the first opportunity to address the scope of its jurisdiction and interpret its jurisdiction underneath the statutes here. Well, not really, because the section that we're talking about, which is 825P, is the jurisdiction of the federal court. It's not really the jurisdiction of FERC. But you're not suggesting that FERC thinks it actually has enforcement authority, are you? I thought you just agreed with me that it doesn't. I'm sorry, Your Honor. I am acting in a place where I don't want to get in front of the commission. The commission has simply not addressed this issue in its orders. Well, it hasn't in the sense that it has issued an order. I don't understand what you're saying. Well, it did not understand the rehearing request to raise whether it was in the wrong forum. Well, let's assume it should have understood that. Nevertheless, the orders don't address what support it has for ordering Paragraph A. I thought it said pretty clearly it's resting on 210M. And you just, through me and our exchange, said, yes, that was a negative pregnant from the other provisions of 210M. Right? I think that there could be things other than implementation challenges. Implementation. I thought maybe I misunderstood the exchange. I thought you were relying on 210M for the substantive merits point that it has authority to declare a violation here, but not that the EPA Act has any change with respect to the enforcement authority, that is, the actual authority to order somebody to do something on pain of something. Am I right about that? That's what you just said I was correct about before. I am just, well, I am just saying that the provision that says that the commission has to go to district court to enforce, it says to enforce an implementation challenge under 210A. I see. If this is arguably a challenge under 210M, maybe the commission could say, oh, you know, this is something different. I thought that's what the commission was saying, oh, at Paragraph 32. You know, without the commission addressing it. What do you mean an implementation challenge? I am looking at H2A. This is something other than an H2A question? It could be, Your Honor. Implementation speaks to implementing the commission's rules, and they apply equally to states and unregulated entities. Is there some, maybe I misunderstood the exchange. Is there a provision under H entitled commission enforcement? Does this come under any provision of H other than 1 and 2, H1 or 2? Does it come under anything else? Could it possibly come under anything else? It could just be part of the inherent authority in the commission in finding its regulation was violated. Well, but that would, if it had that inherent authority, it would have that inherent authority everywhere. And yet H is very clear about what to do under those circumstances. Okay. Okay. Thank you, Your Honor. If you have no further questions. Thank you. Does the petitioner or the intervener have any additional time? All right. I'll ask the two of you to agree on who's going to present the rebuttal. And there's agreement. Okay. We'll give you two minutes. Thank you, Your Honor. Your Honor, FERC not only issued the coercive injunction, the coercive injunction was built on its determination that PURPA was violated by our not going and getting approval under Section 210M. They've linked that back in various sections of their orders, paragraphs 38 and 39 of the initial order. This connection should not occur without following the commission's regulations for authorization to be relieved of the obligation to sell to the QF. In the rehearing order, though they say there may be circumstances for nonpayment, they link it back to the same paragraphs in the original order. So they're saying we did not satisfy 210M, therefore they issued a coercive injunction. 210M, we have not, to clarify, we have not sought termination authority. We don't seek to terminate service to any QFs, including to this complainant. But just to add, FERC counsel talked about the termination of the retail obligation and used the word or again, just like the FERC orders did. Yes, the word or. Or. Yes, sir. They used it in a disjunctive. This is at paragraph 38, JA11. They said to relieve your retail service obligation, utility needs to show that there are competitive retail suppliers or that the electric utility is not required by state law to sell electric energy in a service territory. That's wrong. It's in a conjunctive. So if you're in a state without retail choice like Iowa and 35 other states, if you're in a state like Iowa without retail choice, you can never satisfy 210M-5. Can I ask you this question, which I probably should have asked FERC? Other than this case, have they ever, in these kind of circumstances, actually issued an injunction as compared to just a declaratory order? We've never seen another circumstance like this, Your Honor. Where there's been an actual injunction order. That's correct, Your Honor. We have not seen it in all the perfect cases. And lastly, there is record evidence that the 2004 agreement is still in effect from the interveners themselves. They put into the record their statement that the contract orchestrated by the commission staff has not been canceled. It's at JA-221. They reiterate that at JA-378. And we confirmed at JA-554 that the 2004 agreement stays in effect. So notwithstanding what they said in their brief, there's record uncontroverted evidence that the 2004 agreement stays in place. And lastly, with regard to the one line, that's a very typical configuration for small QFs because they are using their output to satisfy their own needs and they are offsetting, they're eliminating the need to buy at retail. And that's a benefit to them instead of selling back at an avoided cost rate. Okay. I think we have an argument. I want to do something unusual. I'd like to ask FERC the question that I just asked. You can sit down. Thank you. Do you know whether FERC in any other case has issued an injunction for a violation of a rule rather than just issued a declaratory order and then gone to district court? No, I am not aware. In 2005, the 2005 orders involving these same parties, the commission ordered net metering initially. And it did not have that same ordering paragraph. But it did intend to enforce net metering by going to district court. I see. Okay. Okay, thank you. We'll take the matter under submission. We'll take a brief break while the next counsel comes up.